**IN THE COURT OF APPEALS OF IOWA**

No. 25-0152
Filed May 7, 2025

**IN THE INTEREST OF X.M.,**
**Minor Child,**

**H.M., Mother,**
    Appellant,

**T.M., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Brent Pattison, Judge.

A mother and father each appeal the termination of their parental rights to their daughter. **AFFIRMED ON BOTH APPEALS**.

Teresa M. Pope of Pope Law, PLLC, Des Moines, for appellant mother.

Leah Patton of Patton Legal Services, LLC, Ames, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Jami J. Hagemeier of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered without oral argument by Chicchelly, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

A daughter was removed from her mother's custody in 2023 based on concerns that she was using illegal substances while caring for the daughter.[1] The daughter was placed with her paternal grandmother. At the time, the daughter's father was incarcerated—as he has been for almost all of the daughter's life. Eighteen months after removal, the father was still incarcerated and the mother had not addressed her substance-use issues. So the juvenile court found that the daughter could not be returned to either parent's custody and terminated both parents' parental rights. Each now separately appeals.

On our de novo review, we agree with the juvenile court. Termination of the mother's parental rights is in the daughter's best interest given the mother's failure to address the safety concerns she poses to the daughter, and a guardianship is not appropriate here based on the daughter's age and the family interactions. As for the father's appeal, we also agree that it is in the daughter's best interest for the father's rights to be terminated rather than establishing a guardianship as she deserves permanency now. Any parent-child bond does not warrant declining to terminate the father's parental rights, and the relative-custody exception does not apply because the daughter is not in the legal custody of a relative.

We thus affirm on both appeals.

---

[1] We avoid using the parties' names to respect their privacy because this opinion— unlike the juvenile court's order—is public. *Compare* Iowa Code § 232.147(2) (2025), *with id.* §§ 602.4301(2), 602.5110.

## I. Background Facts and Proceedings

In February 2023, a then-one-month-old daughter came to the attention of the Iowa Department of Health and Human Services ("HHS") after it was discovered that the mother was using illegal substances, possibly even while caring for the daughter. A few months later, the mother was caught driving over 100 miles per hour on a gravel road with the daughter in the car. The mother was swerving and appeared to be under the influence. HHS offered substance-use and mental-health-related services to the mother. But she kept using illegal substances. The mother is married to the daughter's father, who was incarcerated in April 2023 for one count of conspiracy to commit a forcible felony. He is scheduled to be released in July 2027 but is eligible for parole in June 2025.

The county attorney petitioned to adjudicate the daughter in need of assistance in May 2023. At first, the daughter was voluntarily placed with her paternal grandmother under a safety plan. But in June, the daughter was adjudicated a child in need of assistance and put in HHS's legal custody for continued placement with her grandmother. In July, the mother reported to HHS that she had been recently discharged from outpatient treatment for failing to engage consistently.

During the November review hearing, the mother reported being successfully discharged from a residential treatment program and enrolling in outpatient treatment. She had also been accepted into and begun participating in an intensive, weekly recovery court. As a result, the court ordered visits between the mother and daughter be switched from fully supervised to semi-supervised.

But shortly after the review hearing, the mother resumed using illegal substances. She was discharged from outpatient treatment for misusing her suboxone. She reported to HHS in December that she had been using methamphetamine and fentanyl, and she tested positive for cocaine and THC that month as well. In March 2024, the mother was admitted to another inpatient treatment facility and tested positive for cocaine and THC upon intake. A few months later, she was discharged from inpatient treatment due to an "outburst" and started outpatient treatment once again. At a June permanency hearing, the court granted a six-month extension to work towards reunification.

Despite the extra time, the mother continued to struggle with substance use. In August, an HHS worker attended a visit with the mother and the daughter. The mother told the HHS worker that she was not sober during this visit, and the worker noted that the mother was "not being attentive" to the daughter but was laying on the ground or distracted on her phone. A week later, the mother reported to HHS that she had relapsed on cocaine and methamphetamine.

An inpatient treatment facility had a bed available for the mother towards the end of September, but the mother refused it. The mother then spent some time at a residential facility for trauma survivors, where she had some treatment services for substance use. But in late November 2024, the mother reported to HHS that she was "in active use," using several different substances. After the mother left the residential facility, HHS struggled to contact her and set up visits. And she stopped participating in weekly recovery court. At the time of the termination hearing, HHS believed that the mother was not engaged in any substance-use or mental-health treatment.

Meanwhile, the father remained incarcerated. There, he took classes to get his GED and attended support group meetings for substance use. He called the grandmother to talk to the daughter multiple times a week.[2] He had up to two video visits with the daughter each month. And the father had one in-person visit with the daughter. HHS described the father's engagement in the case as "minimal."

As for the daughter, she was doing well in the grandmother's care and she continued to be "a happy child." "She smiles, plays and is very affectionate." At first, there were concerns about the grandmother's stability because of the conditions of her home and financial struggles. But these concerns were resolved, leading HHS to believe that the grandmother was "a safe and stable home."

Given the lack of progress with both parents, the State petitioned to terminate parental rights in October 2024, and a hearing was held in December. At the time of the hearing, the father was twenty-one years old and the mother was twenty-two. The father remotely participated from prison. The mother also appeared remotely—she had an active warrant for her arrest pending that she was not yet ready to resolve. And the grandmother and HHS worker testified as well. The daughter's guardian ad litem recommended termination. And the juvenile court ultimately agreed, terminating the parental rights of both parents.

In a thorough and well-reasoned decision, the court found that the State proved termination was warranted for both parents under Iowa Code section 232.116(1)(h) (2024). The court reasoned that the daughter was under two years old, had been adjudicated in need of assistance, had been removed

---

[2] The father testified that he called three to four times a week; the grandmother said it was only once or twice a week.

from her parents' care for around eighteen months, and neither parent was in the position to care for the daughter at the time of the hearing. And the court found that the State proved termination was warranted for the mother under Iowa Code section 232.116(1)(*l*) as well because she "has a severe, substance abuse related disorder" that causes her not to be able to safely care for the daughter.

The court also found that it was in the daughter's best interest for both parents' rights to be terminated. The court explained that the daughter "should not have to wait any longer for her parents to learn to be safe caregivers" and "[t]he bottom line is that these are young parents with significant substance abuse disorders and related criminal justice problems." And the court had "no doubt that neither parent can adequately meet [the daughter's] needs."

The court declined the father's request to apply two discretionary exceptions. First, the court found that the relative-custody exception did not apply because the daughter was in the legal custody of HHS. And second, the court found that the parent-child-bond exception did not apply because the father had not proved that termination would be detrimental to the daughter because of the bond she shared with the father. The court also rejected a guardianship as an appropriate permanency alternative for both parents, finding that because of the daughter's "young age and the family dynamics in this case, termination and adoption are in [the daughter's] best interests—not a guardianship."

Both parents now appeal the juvenile court's order terminating their respective parental rights to the daughter.

## II.   The Mother's Appeal

Terminating parental rights under Iowa Code chapter 232 follows a three-step process.  *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).  First, the State must prove a statutory ground for termination.  *Id.*  Second, the State must show that termination is in the best interest of the child.  *Id.*  And finally, the parent bears the burden to show whether a discretionary exception applies that should preclude termination.  *Id.*  We review a termination decision de novo, giving "respectful consideration" to the juvenile court's fact findings, especially when based on credibility determinations.  *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).  On appeal, the mother raises two challenges to the juvenile court's ruling: (1) whether termination is in the best interest of the daughter and (2) whether a guardianship should have been established as an alternative permanency outcome.

*Best Interest of the Child.*  The mother argues termination of her parental rights is not in the daughter's best interest.  In support of her argument, the mother points to her engagement in services.  She acknowledges that she "will continue to need to address trauma, substance abuse and her mental health," but contends those needs do not warrant termination.  The mother also claims that the grandmother's "ability to provide long term, without additional oversight and assistance, is questionable" based on past struggles.

The best interest of the child is the "paramount concern in a termination proceeding."  *L.B.,* 970 N.W.2d at 313.  We consider both the daughter's long-range and immediate best interests.  *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997).  And we must give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and

to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *see also In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016).

We agree that it is in the daughter's best interest to terminate the mother's parental rights. As the juvenile court found, "the original safety concerns continue to exist today." The mother continues to struggle with substance use. While she has periods where she attends substance-use treatment, many times she has come out of treatment and then resumes using substances. The HHS worker testified that some interactions she has witnessed between the mother and the daughter "are concerning," as the daughter is the one comforting the mother when she is emotionally struggling or her emotions are heightened. Although it is commendable that the mother has participated in services at different times during this case and has tried to deal with past traumas that she has suffered, that does not mitigate the still-present safety issues that she poses to her daughter.

*Guardianship.* The mother also argues that the juvenile court should have instead established a guardianship for the daughter because it "would provide permanency for the child and would provide additional protections for the child through ongoing court oversight." "[A] guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (cleaned up). This is because over the life of the guardianship—potentially until the child turns eighteen—the court could terminate the guardianship or change the guardian at either parent's request or on its own motion. *See id.* at 477–78. It sets up potential conflict between the guardian and the parent. So it often does not "achieve permanency" and stability. *Id.* at 478 (cleaned up). While Iowa Code section 232.104 allows for guardianship as a permanency option, it requires "a

judicial determination that [such a] planned permanent living arrangement is the best permanency plan for the child." Iowa Code § 232.104(3)(a).

We agree with the juvenile court that a guardianship is not in the daughter's best interest. At the hearing, the daughter was about to turn two years old—so a guardianship would continue for sixteen years. And we are skeptical, like the juvenile court, that the parents and the grandmother will continue to "work well together" over those sixteen years. The grandmother testified that she feels like the parents "don't listen" to her and she was adamant that a guardianship would not benefit the daughter or her needs. And she testified, which the juvenile court found credible, that she would "encourage a relationship between [the daughter] and both the parents" even after termination of their parental rights.

Further, the HHS worker testified that a guardianship is not in the best interest of the daughter based on the mother being "inconsistent" and "disruptive." As far as the mother's concerns about the grandmother's ability to parent the daughter, and while HHS at one point had concerns about the grandmother's stability, those concerns have been alleviated. The daughter deserves permanency now, and a guardianship would not give that to her. Therefore, we affirm the juvenile court's guardianship-finding and in turn affirm the juvenile court's termination of the mother's parental rights.

### III.    The Father's Appeal

In his appeal, the father raises four issues. First, he argues that termination of his parental rights is not in the daughter's best interest. Second, he argues that the court should have declined to terminate his rights because of the closeness of his relationship with the daughter. Third, he argues that the court should have

declined to terminate his rights because the daughter is placed with a relative. And fourth, he argues that the court should have established a guardianship as an alternative permanency outcome. We will take each issue in turn.

*Best Interest of the Child.* The father argues that termination of his parental rights is not in the best interest of the daughter because she "needs a father figure in her life, and he wants to fulfill that role when he is released." He also points to his participation in services while in prison and his contact with the daughter through phone calls, video chats, and an in-person visit.

But we agree with the juvenile court that termination is in the daughter's long-term and immediate best interest. The father has been incarcerated for almost all the daughter's life. He was still incarcerated at the time of the hearing and is not scheduled for release until July 2027. While he could be paroled sooner, he has had disciplinary issues while in prison that could negatively affect his release. And he acknowledged that the daughter could not be returned to his care upon his release because he would need to "get [himself] together" and get "back on [his] feet." We agree with HHS that it is not "appropriate to delay permanency for [the daughter]" until the father is released. The daughter is doing well in her grandmother's care, and she is attached to the grandmother. And so, we affirm the juvenile court's best-interest finding.

*Parent-Child Bond Exception.* The father next contends that the court should have declined to terminate his rights because he and the daughter "have a close relationship and bond." *See* Iowa Code § 232.116(3)(c). This statutory exception is permissive, so even if the father and daughter have a close relationship, a court may still order termination when doing so would serve the

child's best interest. *See A.S.*, 906 N.W.2d at 475. And we agree with the juvenile court that the father has not proved by "clear and convincing evidence that termination would be detrimental to [the daughter] due to the closeness of her bond with [the father]."

The father has been incarcerated for almost all of the daughter's life. And while they do have weekly phone calls and video visits, there has only been one in-person visit. And the father seemed to acknowledge that their bond has been impacted by his incarceration—when asked about their bond, he responded, "I mean, I love her. But I only have so much contact with her. She's young. She doesn't understand." Because the mere existence of "some bond between" the father and daughter is not enough to preclude termination, *see M.W.*, 876 N.W.2d at 225, we affirm the juvenile court's rejection of this exception.

*Relative-Custody Exception.* The father also argues that the court should have declined to terminate his rights because the grandmother has custody of the daughter. *See* Iowa Code 232.116(3)(a). Section 232.116(3)(a) applies only when the child is in the *legal* custody of a relative. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). Here, the daughter is in the legal custody of HHS—not the grandmother. Because the exception does not apply, we affirm the juvenile court's rejection of it.

*Guardianship.* Finally, the father argues that the juvenile court should have granted a guardianship as an alternative permanency option because the "child's stability and long-term interests would not be affected" by creating a guardianship. He claims that a "guardianship would allow [him] and the child to continue to have a relationship and would allow contact and visitation between" them. And he

suggests that a "guardianship would not jeopardize the child's permanency and placement." We agree with the juvenile court that a guardianship is not in the daughter's best interest in regard to the father's parental rights for the reasons we explained on the mother's appeal. The daughter deserves permanency now. We thus affirm the juvenile court's termination of the father's parental rights.

\* \* \*

We do not doubt that both parents love the daughter. But we agree with the juvenile court that "these are young parents with significant substance abuse disorders and related criminal justice problems" and "they are each still learning how to take care of themselves and cannot meet the needs of a young child." The daughter has been involved with HHS since she was one month old and was nearly two years old at the termination hearing. The daughter is doing well in her grandmother's care and the time has come for stability and permanency. We therefore affirm the termination of the mother's and father's parental rights to the daughter.

**AFFIRMED ON BOTH APPEALS**.